**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 17, 2017**

# In the Court of Appeals of Georgia

A17A1842. FRAZIER v. GODLEY PARK HOMEOWNERS ASSOCIATION, INC. et al.

ANDREWS, Judge.

This appeal is from the grant of summary judgment for the defendants in an action arising out of a drowning death at a community swimming pool. We affirm.

On July 4, 2014, four-year-old King Frazier drowned in a swimming pool operated by the defendants for the residents and guests of the Godley Park residential community in Savannah, Georgia. He was at the pool with his mother and several relatives, none of whom were residents of that community. But his aunt was a resident there, and although she was not there that day, she had given her relatives her pool key card so that they could access the pool.

The pool was very crowded that day, and King was under water for almost five minutes before he was discovered. Resuscitation efforts by his mother and a nurse who was at the pool failed. Emergency personnel were called, but it took them almost twenty minutes to arrive, partly due to some confusion over the address of the pool.

King's father commenced this action against the Godley Park Homeowners' Association, Gold Crown Management, Inc., and Aaron Hettesheimer in his individual capacity as property manager for Gold Crown, blaming King's death on their negligent management of the pool. The trial court granted summary judgment for the defendants, and this appeal followed. In granting summary judgment for the defendants/appellees, the trial court found that King was a trespasser; that the appellees had owed him only a duty of not wilfully or wantonly injuring him; that the appellees did not breach that duty; and that none of the appellees' actions caused King Frazier's death.

The appellant contends the trial court erred in finding King Frazier was a trespasser. We agree. The aunt who provided the pool key card for accessing the pool was a resident of the community, and as such she was an invitee. See *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811 (440 SE2d 545) (1994). And "[a] guest of a tenant is an invitee upon the premises of the landlord where he is invited

by the tenant and visits him in such premises." (Citation omitted.) *Paul v. Sharpe*, 181 Ga. App. 443, 444 (1) (352 SE2d 626) (1987).

The trial court's basis for finding King Frazier a trespasser was the homeowners' association rules requiring that residents register before getting a pool key card, and accompany any guests invited to the pool. The aunt did neither in this case, but she claimed never to have been informed of such requirements. She also stated that she had frequently allowed her family to use her key card to gain access to the pool, and that the pool was often open and unlocked so that anyone could get in even without a key card. "An invitation may arise from known customary use, and it may be inferred from conduct or from any state of facts upon which it naturally and necessarily arises." (Citation omitted.) *Chambers v. Peacock Constr. Co.*, 115 Ga. App. 670, 676 (3) (155 SE2d 704) (1967).

It thus appears at least a jury question existed as to whether King Frazier was a trespasser or invitee. However, even assuming King Frazier was an invitee, the trial court correctly concluded that the appellees were entitled to summary judgment on the grounds they had not been negligent in any fashion.

The appellant contends the appellees had been negligent in three ways: 1. by failing to have a lifeguard present; 2. by failing to have a safety rope with floats

demarcating the change in slope from the beginner's area of the pool (having a depth of three feet or less) to the shallow area of the pool (having a depth of five feet or less) ; and 3. by failing to post a sign displaying the pool's address. With regard to the need for a lifeguard, it was undisputed that the appellees posted signs at the pool that no lifeguard was present, and that the applicable safety regulations for swimming pools did not require the provision of a lifeguard for the type of pool maintained by the appellees at Godley Park.

The Godley Park pool was a zero depth entry pool, having the same gradual slope starting from zero feet at the edge of the pool to the deepest part (with a depth of five feet.) Chapter 290-5-57-.05(4)(b) of the Chatham County Department of Public Health regulations for swimming pools requires flotation lines at "[t]he *transition point or point of slope change* of the pool from the beginners' area to the shallow area and from the shallow area to the deep area. . . ." (Emphasis supplied.) As there was no change in the slope or break in grade at any point in the gradual slope of the Godley Park pool, the Chatham County swimming pool inspectors found that regulation inapplicable to a zero depth entry pool and that no flotation line was required. Likewise, both the district environmental health director for the coastal health district and a licensed instructor for the National Swimming Pool Foundation's

4

Certified Pool and Spa Operator's Course indicated the applicable rules and regulations for swimming pools did not require a flotation line for the configuration and depth of the Godley Park pool.

The appellant adduced the deposition testimony of an expert who interpreted that regulation as requiring a flotation line at the three feet level of the Godley Park pool, where the beginners' area ended and the shallow area began. However, the appellant's expert's interpretation of the regulation was mistaken, as the regulation clearly applies only where there is a transitional change in slope of the pool's floor.

The appellees maintained an emergency land-line phone station at the entry area of the pool. At the time of the incident, there was no address posted by the emergency phone. The pool's street address was posted at the street. After King Frazier was retrieved from the pool, several observers called 911 on cell phones, and did not use the land-line emergency phone which would have indicated the exact address to the 911 operator.

The appellant contends the possible confusion over the correct address related to the 911 operator, which might have been avoided if the appellees had posted the pool's address by the emergency phone, may have contributed to the late arrival of the emergency responders. However, according to the appellees' expert who was a

5

licensed instructor for the National Swimming Pool Foundation's Certified Pool and Spa Operator's Course, Godley Park's signage was Code compliant; Godley Park was not required to post an address at the pool's location, and the street signage properly displayed the street address.

Moreover, the evidence was undisputed that the arrival time of the emergency responders had no bearing on King Frazier's death. The doctor who performed an autopsy on the child testified that it was unlikely he could have been resuscitated after being under water for four minutes. Even the appellant's own swimming pool expert was of the opinion it served no purpose to criticize the adequacy of the rescue efforts, because by the time the child was discovered at the bottom of the pool, it was way too late. So any delay in arrival time of the emergency responders did not contribute to King Frazier's death.

"An owner of a swimming pool is not an insurer of its safety but is liable for injury only if its negligence was the proximate cause of the injury." (Citation omitted.) *Plantation at Lenox v. Lee*, 196 Ga. App. 420, 423 (395 SE2d 817) (1990). "Regardless of the age or capacity of the injured person, if there is no breach of any legal duty on the part of the defendant toward such person, there can be no legal liability." (Citation and punctuation omitted.) *Winchester v. Sun Valley-Atlanta*, 206

Ga. App. 140, 142 (424 SE2d 85) (1992). In the instant case, even if King Frazier were considered an invitee and the appellees owed him a duty ordinary care, the evidence of record failed to show any type of negligence on the part of the appellees that contributed to his drowning death. Rather, as indicated in the report by the police officer who investigated the incident, the evidence showed "lack of proper adult supervision."

Accordingly, the trial court properly granted summary judgment for the appellees.

*Judgment affirmed. Ellington, P. J.,concurs. Rickman, J., concurs in judgment only.*